THE STATE OF OHIO, APPELLEE, *v.* RITCHEY, APPELLANT.

104

(Nos. C-870556 and C-870557—
Decided August 17, 1988.)

*Richard A. Castellini,* city solici-
tor, *Terrence R. Cosgrove,* city pros-
ecutor, and *William L. Mallory, Jr.,*
for appellee.

*Edward P. Bruggeman,* for ap-
pellant.

*Per Curiam.* The central issues in
these appeals require our considera-
tion of two subsections of R.C.
2921.13(A). This falsification statute
has ten subsections that describe
specific types of false statements that
are designated as first-degree misde-
meanors, as compared to false
statements that constitute perjury, a
third-degree felony. The two subsec-
tions involved in the instant case are
(A)(3) and (A)(4) of R.C. 2921.13, and it
is our conclusion that false statements
in the instant case—signed time cards
falsely reporting a temporary city
employee's hours of work—do not con-
stitute violations of either subsection.

Defendant-appellant Michael G.
Ritchey was, during the period in ques-
tion, an employee of the Cincinnati
Health Department assigned as direc-
tor of the Sexually Transmitted
Disease ("STD") Program ("pro-
gram"). The program offered testing
for Acquired Immune Deficiency Syn-
drome ("AIDS") and counselling for
those discovered to have the fatal
disease. It was funded by a series of
ninety-day federal grants to the state
of Ohio that were allocated to the Cin-
cinnati Health Department. Ritchey's
difficulties arose during the third
ninety-day period when, even though
renewal of the grant was promised and
expected, there was a delay in funding
that caused the grant money to arrive

several months late. As director, Rit-
chey felt an obligation to maintain the
program as fully staffed as it had been,
but in the absence of the grant money,
he needed alternative methods of com-
pensating the program's employees.
One of the crucial tasks was the
counselling of persons who came in to
be tested; the program called for two
counsellors. A brief reflection on the
terminal nature of AIDS will indicate
the crucial function performed by the
counsellors.

When the funds stopped coming,
the two original counsellors quit the
program. A person who was already
employed in other duties in the Depart-
ment of Health was assigned to fill one
of the two positions, working the
needed twenty hours per week, her
pay coming initially from other depart-
ment funds and then, later, from the
grant funds when received. In fact,
after the grant money began to come
in, she was paid from the grant funds
for all of her work, including that per-
formed on other tasks for the depart-
ment.

The other counsellor, Thomas
Zeitz, was needed for twenty hours per
week also, and he started working with
the expectation of being fully compen-
sated later. He could not be hired
directly as a city employee, for one
reason or another (not patent on the
record). Ritchey and a supervisor drew
up a "personal service" contract, but
that was rejected by the City
Solicitor's office for reasons not en-
tirely clear on the record. Frustrated
by the inability to compensate Zeitz for
work well done, Ritchey had him "sup-
plied" by Kelly Service, Inc. ("Kelly"),
as temporary help under an existing
city contract with Kelly for the supply
of temporary labor. In order to do this,
Ritchey signed four[1] time cards stating

---

[1] State's exhibit No. 1 contains five
time cards, but Ritchey testified that he did

not sign the fifth one. The trial court ap-
peared to accept that testimony. However,

that Zeitz had worked forty hours in each of four successive weeks; the total hours may have been correct but Zeitz clearly did not work the eight-hour days or the forty-hour weeks that were reported on the time cards.

Ritchey does not contest the falsity of the time cards, but he strenuously argues that he had no purpose to mislead his superiors. He terminated the use of this method of compensating Zeitz the moment Ritchey's superior questioned its propriety. Zeitz quit. Later, when the Health Commissioner suggested that Ritchey personally reimburse the city for funds paid through Kelly to Zeitz, Ritchey paid the city $1,314. Nevertheless, the instant complaints were filed against him.

Both complaints charged him with knowingly making a false statement, one complaint alleging it was made "with the purpose to mislead a public official in performing his official function" under R.C. 2921.13(A)(3), and the other alleging it was made "with purpose to secure benefits administered by a governmental agency or paid out of a public treasury" under R.C. 2921.13(A)(4).[2] After a bench trial, the court rendered an opinion in writing, found Ritchey guilty of both charges (holding nevertheless that the two violations were allied offenses of similar import under R.C. 2941.25), and sentenced him under the second charge for making a false statement

for the purpose of securing governmental benefits.

In his two assignments of error, interpreted in accordance with appellate counsel's statements in oral argument on appeal, Ritchey contends that the two findings, judgments and convictions are erroneous as a matter of law. We agree, and we sustain both assignments of error.

Upon consideration of R.C. 2921.13(A)(4), we hold that the compensation obtained for Zeitz through the false Kelly time cards does not fall within the meaning of "benefit" as used in that subsection. The language of the subsection begins with descriptions of certain specific types of governmental disbursements but concludes with two general, ambiguous clauses. The beginning references are to "workers' compensation," "unemployment compensation," "aid for the aged," and so forth. The concluding clauses are: "or other benefits administered by a governmental agency or paid out of a public treasury." Does Zeitz's compensation for services rendered fall within the ambiguous meaning of "benefits"? We hold it does not.

Applying the mandate of R.C. 2901.04(A) that statutes defining offenses shall be construed strictly against the state and liberally in favor of the accused, we turn to the more general principle of statutory construction known as the rule of *ejusdem*

---

Ritchey admitted signing the other four time cards.

[2] The pertinent parts of R.C. 2921.13 read as follows:

"(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following apply:

"* * *

"(3) The statement is made with pur-

pose to mislead a public official in performing his official function.

"(4) The statement is made with purpose to secure the payment of workers' compensation, unemployment compensation, aid for the aged, aid for the blind, aid for the permanently and totally disabled, aid to dependent children, general relief, retirement benefits, or other benefits administered by a governmental agency or paid out of a public treasury."

106

*generis.* When general words follow enumerations of specific or particular classes, subjects or things, the general words are limited to mean that same kind of class, subject or thing specifically listed, unless there is a clear manifestation of a contrary purpose. *George H. Dingledy Lumber Co.* v. *Erie RR. Co.* (1921), 102 Ohio St. 236, 131 N.E. 723, paragraph two of the syllabus; *Glidden Co.* v. *Glander* (1949), 151 Ohio St. 344, 349-350, 39 O.O. 184, 186-187, 86 N.E. 2d 1, 4. We note that in *State* v. *Greenburg* (Sept. 30, 1986), Franklin App. No. 86AP-286, unreported, the court interpreted subsection (A)(8) of R.C. 2921.13, and applying the principle of *ejusdem generis,* held that a student identification card does not fall within the meaning of "other valuable benefit or distinction," because that subsection first uses clearly specific language (that is, "degree, diploma, certificate of attainment, award of excellence, or honor"). The conviction under R.C. 2921.13(A)(4) was erroneous.

Turning to R.C. 2921.13(A)(3), we believe that the evidence was insufficient to support the trial court's conclusion that Ritchey's false statements were made "with purpose to mislead." In its written decision, the trial court stated:

"The court finds that defendant's actions were not motivated by a desire for personal gain, and in this respect it is clear that following a discussion with the Health Commissioner, defendant repaid the City $1300 * * *. Defendant's motivation was to keep the STD program operational, to serve the immediate needs of the patrons, to enhance the chances of the grant renewal, and to fulfill a moral obligation as he saw it to pay Zeitz for time he worked in preceding weeks for which Zeitz was not compensated. It is not disputed that Zeitz was effective in the position as is the defendant in his." (Footnote omitted.)

To this recital, we add that Ritchey's clear and unequivocal testimony was that his purpose was to keep the AIDS program functioning and to see that Zeitz was paid for the hours he worked, and not to mislead public officials or to overpay Zeitz. We conclude that there was no evidence to contradict these protestations, and that they are corroborated by the facts and circumstances in evidence. We hold that the trial court erred as a matter of law when it concluded that "the purpose to mislead element is certainly satisfied." The finding that Ritchey was guilty of a violation of R.C. 2921.13(A)(3) was erroneous.

We reverse the judgments below and discharge Ritchey of the charges made in the two complaints under scrutiny.

*Judgments reversed.*

BLACK, P.J., DOAN and KLUS-MEIER, JJ., concur.